UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | |
| Plaintiff, | Case No.: 17-4722 |
| v. | Jury Trial Demanded |
| MICHAEL S. WRIGHT AND WRIGHT TIME CAPITAL GROUP LLC (d/b/a GLOBAL FX CLUB) | |
| Defendants. | |

**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF,
RESTITUTION, AND CIVIL MONETARY PENALTIES
UNDER THE COMMODITY EXCHANGE ACT**

Plaintiff, U.S. Commodity Futures Trading Commission ("CFTC" or "Commission"), by and through its attorneys, alleges as follows:

## I.     SUMMARY

1.     From approximately August 2010 through the present (the "Relevant Period"), Defendants Michael S. Wright and Wright Time Capital Group LLC (d/b/a "Global FX Club") ("WTCG," and together with Wright, "Defendants") have engaged in a fraudulent scheme to solicit more than $400,000 from at least 10 members of the public ("pool participants") to participate in a pooled investment to engage in foreign currency ("forex") trading. Rather than use pool participants' funds for forex trading as promised, Defendants have only traded a portion of pool participants' funds, misappropriated pool participants' funds, and issued false account statements to pool participants to conceal their trading losses and misappropriation.

2.      In furtherance of the fraudulent scheme, Defendants made material misstatements and omissions in solicitations to prospective pool participants, including misrepresenting that all or substantially all of participants' funds would be pooled and used to engage in forex trading.

3.      In reality, Defendants only traded a portion of pool participants' funds in forex. Between August 2010 and April 2016, Defendants deposited approximately $115,800 into forex trading accounts that were used to trade pool participants' funds.  As of mid-May 2016, those forex trading accounts had suffered approximately $114,300 in trading losses.  Defendants also misappropriated pool participants' funds for unauthorized personal or business expenses such as food, clothing, jewelry, and entertainment.

4.      In order to conceal their trading losses and misappropriation, Defendants made and issued false pool participant account statements that inflated and misrepresented the value of the accounts and the pool's trading returns.  The false account statements purported to reflect positive trading gains for the pool during periods of time when Defendants did not actually engage in any forex trading, or engaged in trading that was unprofitable.

5.      Around the fall of 2016, pool participants began having difficulty contacting Defendants.  In or around early November 2016, Defendants misrepresented to a pool participant who sought to withdraw funds from his account that the funds would be transferred to the pool participant in approximately two weeks, but the pool participant never received the funds.

6.      Around mid-to-late November or December 2016, Defendants cut off communications with pool participants; stopped returning telephone calls, text messages, and emails; and left pool participants unable to recover any funds from their accounts.

7.      During the Relevant Period, Defendants WTCG and Wright also failed to operate the commodity pool as a separate legal entity – by receiving pool funds in WTCG or Wright's

name rather than the name of the commodity pool, receiving pool participant funds in a name other than that of the pool, and by commingling pool funds with non-pool property – and failed to register with the Commission as a commodity pool operator ("CPO").

8.      By virtue of this conduct and the conduct further described herein, Defendants, either directly or as controlling persons, have engaged, are engaging, or are about to engage in acts and practices in violation of Sections 4b(a)(2)(A)-(C), 4m(1), 4*o*(1)(A)-(B), and 2(c)(2)(iii)(I)(cc) of the Commodity Exchange Act, 7 U.S.C. § et seq. (the "Act"), 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6m(1), 6*o*(1)(A)-(B), and 2(c)(2)(iii)(I)(cc) (2012), and Commission Regulations ("Regulations") 4.20(a)-(c), 5.2(b)(1)-(3), and 5.3(a)(2), 17 C.F.R. § 4.20(a)-(c), 5.2(b)(1)-(3), and 5.3(a)(2) (2016).

9.      During the Relevant Period, Defendant Wright was an officer, employee or agent of WTCG.  Therefore, WTCG is liable for the acts and omissions of Wright done in the scope of his employment or office, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2016).

10.      Defendant Wright was a controlling person of WTCG throughout the Relevant Period and did not act in good faith or knowingly induced WTCG's violations of the Act and Regulations described herein.  Therefore, Wright is liable for WTCG's violations of the Act and Regulations, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

11.      Accordingly, the Commission brings this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012) and Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) (2012), to enjoin Defendants' unlawful acts and practices, to compel their compliance with the Act and the Regulations promulgated thereunder, and to enjoin them from engaging in any commodity related activity.  In addition, the Commission seeks civil monetary penalties, and remedial

ancillary relief, including, but not limited to, trading and registration bans, restitution,

disgorgement, rescission, pre- and post-judgment interest, and such other and further relief as the

Court may deem necessary and appropriate.

12.      Unless restrained and enjoined by this Court, Defendants will likely continue to

engage in acts and practices alleged in this Complaint and similar acts and practices, as described

below.

## II.      JURISDICTION AND VENUE

13.      Section 6c(a) of the Act, 7 U.S.C. § 13a-1 (2012), authorizes the Commission to

seek injunctive and other relief against any person whenever it shall appear to the Commission

that such person has engaged, is engaging, or is about to engage in any act or practice

constituting a violation of any provision of the Act, or any rule, regulation, or order thereunder.

14.      Venue lies properly with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C.

§ 13a-1(e) (2012), because Defendants transacted business in this District and certain

transactions, acts, practices, and courses of business alleged in this Complaint occurred, are

occurring, or are about to occur in this District.

## III.      THE PARTIES

15.      Plaintiff **U. S. Commodity Futures Trading Commission** is an independent

federal regulatory agency charged by Congress with the administration and enforcement of the

Act, 7 U.S.C. §§ 1 *et seq*., and the Regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq*.

16.      Defendant **Wright Time Capital Group LLC** is a New York limited liability

company with its last known place of business at 241 West 38th Street #1175, New York, NY.

WTCG has never been registered with the Commission in any capacity.  In or around November

2012, WTCG assumed the name "Global FX Club" and also began doing business under the name "Global FX Club" or "Wright Time Capital Group LLC DBA Global FX Club."

17.     Defendant Michael S. Wright is the CEO, founder, and chief strategist of WTCG. Wright is a Jersey City, New Jersey resident.  Wright has never been registered with the Commission in any capacity.

### IV.     STATUTORY AND REGULATORY BACKGROUND

18.     Section 1a(11) of the Act, 7 U.S.C. § 1a(11) (2012), defines a CPO, in relevant part, as any person "engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including any . . . agreement, contract, or transaction described in [Sections 2(c)(2)(C)(i) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(i) (2012)]."

19.     Section 2(c)(2)(C)(i) of the Act, 7 U.S.C. § 2(c)(2)(C)(i) (2012), provides in pertinent part, and subject to certain exceptions not relevant here, that the Commission has jurisdiction over any agreement, contract, or transaction in foreign currency if the transactions are offered to or entered into with a person that is not an eligible contract participant ("ECP") on a leveraged or margined basis, and the transactions do not result in actual delivery within two days or otherwise create an enforceable obligation to deliver between a seller and buyer that have the ability to deliver and accept delivery, respectively, in connection with their line of business.

20.     Section 2(c)(2)(C)(vii) of the Act, 7 U.S.C. § 2(c)(2)(C)(vii) (2012), provides that the Act applies to, and the Commission shall have jurisdiction over, an account or pooled investment vehicle that is offered for the purpose of trading, or that trades, any agreement,

contract or transaction in foreign currency described in Section 2(c)(2)(C)(i) of the Act, 7 U.S.C. § 2(c)(2)(C)(i) (2012).

21.     Section 2(c)(2)(C)(ii)(I) of the Act, 7 U.S.C. § 2(c)(2)(C)(ii)(I) (2012), states that Sections 4b and 4*o* of the Act, 7 U.S.C. §§ 6b and 6*o*, apply to pooled investment vehicles that are offered for the purpose of trading, or that trade, any forex agreement, contract, or transaction, and that involve persons or entities who are not ECPs.

22.     Section 2(c)(2)(C)(iv) of the Act, 7 U.S.C. § 2(c)(2)(C)(iv) (2012), states that Section 4b of the Act, 7 U.S.C. § 6b, applies to forex agreements, contracts, or transactions "as if" they were contracts of sale of a commodity for future delivery.

23.     Section 1a(18) of the Act, 7 U.S.C. § 1a(18) (2012), defines an ECP, in relevant part, as (1) a commodity pool that (i) has total assets exceeding $5,000,000 and (ii) is formed or operated by a person subject to regulation under the Act, provided that for purposes of Section 2(c)(2)(C)(vii) of the Act the term ECP shall not include a commodity pool in which any participant is not otherwise an eligible contract participant, *see* 7 U.S.C. § 1a(18)(iv) (2012), or (2) an individual who has amounts invested on a discretionary basis, the aggregate of which exceeds $10 million, or $5 million if the individual enters into the transaction to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual, *see* 7 U.S.C. § 1a(18)(xi) (2012).

24.     Pursuant to Section 2(c)(2)(C)(iii)(I)(cc) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc) (2012), and subject to certain exceptions not relevant here, an entity must be registered pursuant to Commission regulation in order to operate or solicit funds for any pooled investment in connection with forex transactions.

25.     Pursuant to Commission Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2016), and subject to certain exceptions not relevant here, any person who operates or solicits funds, securities or property for a pooled investment vehicle that is not an ECP and engages in retail forex transactions is defined as a retail forex CPO.

26.     Regulation 5.1(m), 17 C.F.R. § 5.1(m) (2016), defines a retail forex transaction in relevant part as any account, agreement, contract or transaction described in Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) (2012).  A retail forex transaction does not include an account, agreement, contract or transaction in foreign currency that is a contract of sale of a commodity for future delivery (or an option thereon) that is executed, traded on or otherwise subject to the rules of a contract market designated pursuant to Section 5(a) of the Act.

## V.     FACTS

### A.     Defendants' Fraudulent Solicitations, False Statements, and Misappropriation

27.     During the Relevant Period, WTCG, by and through its officers, employees or agents, fraudulently solicited pool participants to invest in a commodity pool for forex trading, issued false account statements to pool participants, and misappropriated pool participants' funds.  In furtherance of the fraudulent scheme, Defendants made misrepresentations and omissions to pool participants and prospective pool participants in written solicitations and correspondence sent via email and mail and through telephone calls.

28.     The fraudulent solicitations included, but were not limited to, misrepresentations by Defendants that all or substantially all of pool participants' funds would be pooled and used to engage in forex trading.

29.     For example, in or around December 4, 2013, Defendants told one prospective pool participant in a written solicitation that his $30,000 investment would be pooled and used

for forex trading and that after 100% profit was made, the gains thereafter would be split with the pool participant 85/15 in favor of WTCG.

30.     Defendants told other prospective pool participants in oral and written solicitations that WTCG would charge no fee, or a "fairly low" fee, until the pool participant's money doubled, after which point the pool participant would be charged a fee of 85% on additional profits.

31.     These representations were false because, as described further below, Defendants did not use all of pool participants' funds to engage in forex trading and instead misappropriated pool participants' funds for unauthorized personal and business expenses.

32.     Through the misrepresentations described above, Defendants WTCG, by and through their officers, employees, and agents, fraudulently solicited and obtained over $400,000 from at least 10 persons to invest in a forex commodity pool.

33.     Defendants deposited a portion of the pool participant funds they received into a bank account at a banking institution ("Bank 1") held in the name of Michael Wright or into bank accounts at two other banking institutions ("Bank 2" and "Bank 3") held in the name of, and for the benefit of, WTCG.

34.     Defendant Wright was the sole authorized signatory of WTCG's bank accounts at Bank 2 and Bank 3.

35.     During the Relevant Period, Defendants made multiple withdrawals from WTCG bank accounts from automated teller machines (ATMs) in New York County.  For example, Defendants withdrew over $400 from a WTCG bank account from an ATM on 7th Avenue in Manhattan on February 20, 2013.

36.     In or around August 2010, Defendant Wright opened an individual forex trading account at a forex trading firm ("Forex Trading Firm 1"), a registered Futures Commission Merchant ("FCM") and Retail Foreign Exchange Dealer ("RFED").  The forex trading account at Forex Trading Firm 1 ("Forex Trading Account 1") was held in the name of, and for the benefit of, Michael Wright, not for the commodity pool operated by Defendants.  Defendant Wright was the sole signatory of Forex Trading Account 1 and was the only person who had authority to trade the account.

37.     In or around July 2015, Defendant Wright opened an individual forex trading account at a second forex trading firm ("Forex Trading Firm 2"), a registered Futures Commission Merchant and Retail Foreign Exchange Dealer.  The forex trading account at Forex Trading Firm 2 ("Forex Trading Account 2," and together with Forex Trading Account 1, the "Forex Trading Accounts") was held in the name of, and for the benefit of, Michael Wright, not for the commodity pool operated by Defendants.  Defendant Wright was the sole signatory of Forex Trading Account 2 and was the only person who had authority to trade the account.

38.     Defendants transferred some but not all of the funds they received from pool participants into the Forex Trading Accounts.  Between August 2010 and April 2016, Defendants deposited approximately $115,800 into the Forex Trading Accounts.  During the same time period, Defendants withdrew approximately $820 from the Forex Trading Accounts.

39.     At all relevant times, Wright individually and on behalf of WTCG, controlled and directed the forex trading in the Forex Trading Accounts.

40.     Through the Forex Trading Accounts, Defendants engaged in forex transactions on a leveraged or margined basis that did not result in actual delivery within two days or

otherwise create an enforceable obligation to deliver between a seller and buyer that have the ability to deliver and accept delivery, respectively, in connection with their line of business.

41.     As of mid-May 2016, the Forex Trading Accounts incurred, on a net basis, realized trading losses of approximately $114,300.

42.     Instead of using all or substantially all of pool participants' funds for forex trading as promised, Defendants misappropriated the majority of pool participants' funds for unauthorized purposes.

43.     Defendants failed to disclose to pool participants that Defendants did not invest all pool participant funds as promised in forex trading.

44.     Defendant Wright, through his control over his and WTCG's bank accounts, personally misappropriated pool participants' funds for unauthorized personal or business expenses such as food, clothing, jewelry, and entertainment.

45.     For example, on February 25, 2013, Defendants spent, or caused to be spent, over $1,000 at a department store on Fifth Avenue in Manhattan using funds from a WTCG bank account.  Similarly, on September 9, 2013 and January 5, 2014, Defendants spent, or caused to be spent, over $4,000 and $1,000 respectively at luxury jewelers in Midtown, Manhattan using funds from a WTCG bank account.

46.     During the Relevant Period, Defendants knowingly made, or caused to be made, false account statements that inflated and misrepresented the value of pool participants' accounts and the pool's trading returns.

47.     Defendants sent false accounts statements via email on January 14, 2016 and July 6, 2016 to at least one pool participant that resided in New York County, New York.

48.     The false account statements purported to reflect profitable earnings in the pool for periods when Defendants knew, or had to be aware, that there were in fact no such profitable earnings because Defendants were not engaging in forex trading at the time and because there was an overall significant decrease in the net value of the pool due to the combined effect of Defendants' unprofitable forex trading and misappropriation.

49.     For example, shortly after the end of the second quarter of 2016, Defendants made, or caused to be made, false and misleading account statements and sent them to at least six pool participants via email.  The statements showed bar graphs that created the appearance that the pool had consistent positive forex trading returns ranging from +1.08% a month to +18.81% a month for each month from November 2014 through June 2016.  These statements were false, however, because in reality, WTCG did not engage in any forex trading from November 2014 through March 2015, mid-July 2015 through September 2015, or after mid-May 2016. Moreover, the forex trading Defendants did engage in for certain periods between April 2015 and mid-May 2016 resulted in overall trading losses.

50.     Although Defendants did not engage in any forex trading after mid-May 2016, Defendants continued to make and issue false pool participant account statements that created the appearance of pool forex trading gains through the end of the third quarter 2016.

51.     The false account statements Defendants made or caused to be made also inflated and misrepresented the value of the pool participants' accounts.  For example, the individual account statements for the second quarter of 2016 for six pool participants, sent via email shortly after the end of the second quarter of 2016, showed account values that totaled in excess of $678,000 when combined.  In reality, most or all of the pool participants' funds had been lost due to Defendants' trading losses and misappropriation.

52.     Defendants did not disclose to pool participants that the pool suffered significant trading losses or that some or all of their funds were actually misappropriated and never used for forex trading.

53.     By making and issuing such account statements, Defendants knowingly either misrepresented or attempted to misrepresent to pool participants, or willfully deceived or attempted to deceive pool participants, on multiple occasions during the Relevant Period.

54.     Defendant Wright knew or should have known that pool funds were being misappropriated and not used for forex trading because he controlled his and WTCG's bank and trading accounts and engaged in the misappropriation himself.

55.     Around the fall of 2016, pool participants began having difficulty contacting Defendants.

56.     In or around November 2016, Defendants made misrepresentations to at least one pool participant regarding the availability of pool funds for withdrawal.  On November 1, 2016, a pool participant sent an email request to Defendants to withdrawal $200,000 from his account. The next day, Defendants responded via an email that falsely created the appearance that the pool participant's funds would be returned in approximately two weeks.  The email stated that WTCG was in receipt of the pool participant's request and that it would have to (1) close positions, which would be done by the end of the week, (2) transfer funds from its trading account to Bank 2, which would take approximately 3-5 business days, and (3) then transfer the funds to the pool participant via ACH-Wire, which would take 2-3 business days.  After more than two weeks, however, the pool participant never received the funds.  To date, Defendants have not returned the pool participant's funds.

57.     Around mid-to-late November or December 2016, Defendants stopped communicating with pool participants or returning pool participants' emails, telephone calls, and text messages.  Pool participants have been unable to recover funds from their accounts.

58.     At no time during the Relevant Period did any purported commodity pool operated by Defendants qualify as an ECP.  The purported commodity pool operated by Defendants during the Relevant Period was a non-ECP, and was therefore subject to the jurisdiction of the Commission, because (1) at no time during the Relevant Period did the pool have assets in excess of $5,000,000, (2) at no time during the Relevant Period was any purported commodity pool formed and operated by a person subject to regulation under the Act, because none of the Defendants were properly registered with the Commission as a CPO, and (3) at all times during the Relevant Period, one or more pool participants did not qualify as an ECP, as defined by Section 1a(18)(A)(ix) of the Act, 7 U.S.C. § 1a(18)(A)(ix) (2012).

**B.      Commingling Pool Funds and Failure to Operate Pool as Separate Entity**

59.     WTCG, while acting as a CPO, also failed to operate its commodity pool as a separate legal entity, received pool funds in the name of Wright or WTCG rather than the pool, and commingled pool funds with non-pool property by depositing pool funds into the bank accounts of Wright or WTCG rather than a separate bank account for the pool.

**C.      Defendants' Failure to Register With the Commission**

60.     During the Relevant Period, Defendant WTCG, by and through its officers, employees or agents, used the mails, emails, wire transfers, websites, and other means or instrumentalities of interstate commerce, to solicit pool participants and prospective pool participants.

61.     WTCG was never registered as a CPO.  During the Relevant Period, WTCG acted as a CPO by engaging in a business that is of the nature of a commodity pool and, in connection with that business, soliciting and accepting pool funds from participants for the purpose of trading in forex transactions described in Section 2(c)(2)(C)(i) of the Act, 7 U.S.C. § 2(c)(2)(C)(i) (2012), which were not transactions in foreign currency executed, traded on, or otherwise subject to the rules of a designated contract market pursuant to Section 5(a) of the Act.

62.     During the Relevant Period, WTCG was not statutorily exempt or excluded from registration as a CPO.  Moreover, WTCG never filed any electronic or written notice with the National Futures Association that it was exempt or excluded from registration as a CPO, as required by Commission Regulations 4.5(c) and 4.13(b)(1).

**D.     Controlling Person Liability**

63.     Throughout the Relevant Period, Defendant Wright was the CEO, founder, and chief strategist of WTCG.

64.     During the Relevant Period, Defendant Wright did not act in good faith or knowingly induced WTCG and its officers', employees' or agents' violations of the Act and Commission Regulations by personally making the misrepresentations and omissions described above concerning how the funds would be used and the availability of funds for withdrawal; making false account statements and sending them to pool participants; and misappropriating, or causing WTCG to misappropriate, pool participants' funds.  Wright knew or should have known that WTCG was not using pool participants' funds to trade forex, that he had been making false account statements, and that he had been misappropriating pool participant funds.  Wright also failed to remove or correct Defendants' misrepresentations and failed to disclose the misappropriation of pool participant funds.

## V.  VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

### COUNT ONE

### Violations of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C), and Regulation 5.2(b)(1)-(3), 17 C.F.R. § 5.2(b)(1)-(3)
### (Commodities/Forex Fraud by Misrepresentations, Omissions, False Statements, and Misappropriation)

65.     Paragraphs 1 through 64 are realleged and incorporated herein by reference.

66.     Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C) (2012), makes it unlawful "for any person, in or in connection with any order to make, or the making of, any contract for sale of any commodity for future delivery . . . that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market – (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or] (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to an order or contract for or . . . with the other person."

67.     Pursuant to Section 2(c)(2)(C)(iv) of the Act, 7 U.S.C. § 2(c)(2)(C)(iv) (2012), Section 4b of the Act applies to the forex transactions described herein "as if" they were a contract of sale of a commodity for future delivery.

68.     Commission Regulation 5.2(b), 17 C.F.R. § 5.2(b) (2016), provides, in relevant part, that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction: (1) to cheat or defraud or attempt to cheat or defraud any person; (2) willfully

15

to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; or (3) willfully to deceive or attempt to deceive any person by any means whatsoever.

69.     Defendant WTCG, by and through its officers, employees, and agents, and Wright violated Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C) (2012), and Regulation 5.2(b)(1)-(3), 17 C.F.R. § 5.2(b)(1)-(3) (2016), by making false representations and omissions including but not limited to (1) misrepresenting to prospective pool participants that all or substantially all of participants' funds would be pooled and used to engage in forex trading; (2) sending pool participants false account statements that inflated and misrepresented the value of their accounts and the pool's trading returns; (3) misrepresenting that pool participant funds were available for withdrawal; and (4) misappropriating pool participants' funds for unauthorized personal or business expenses rather than engaging in retail forex trading and failing to disclose that pool participants' funds had been misappropriated.

70.     In soliciting pool participants and prospective pool participants, Defendants WTCG and Wright directly violated Section 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A) and (C) (2012), and Commission Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1) and (3) (2016), by falsely representing that all or substantially all of pool participants' funds would be pooled and used to engage in forex trading.

71.     Defendants WTCG, by and through its officers, employees, and agents, and Wright directly violated Section 4b(a)(2)(B) of the Act, 7 U.S.C. § 6b(a)(2)(B) (2012), and Commission Regulation 5.2(b)(2), 17 C.F.R. § 5.2(b)(2) (2016), by making, or causing to be made, false account statements that inflated and misrepresented the value of pool participants' accounts and the pool's trading returns.

72.     Defendants WTCG, by and through its officers, employees, and agents, and Wright also directly violated Section 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A) and (C) (2012), and Commission Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1) and (3) (2016), by misappropriating WTCG pool participants' funds for unauthorized personal or business expenses rather than for forex trading.

73.     The foregoing acts, omissions, and failures occurred within the scope of Wright's employment or office with WTCG.  Therefore, WTCG is liable for Wright's acts, omissions, and failures in violation of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C) (2012), and Commission Regulation 5.2(b)(1)-(3), 17 C.F.R. § 5.2(b)(1)-(3) (2016), pursuant to Section 2(a)(1)(B) of the Act, as amended, 7 U.S.C. § 2(a)(1)(B) (2012), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2016).

74.     Defendant Wright held and exercised direct and indirect control over WTCG and either did not act in good faith or knowingly induced WTCG's violations of Sections 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C) (2012), and Commission Regulation 5.2(b)(1)-(3), 17 C.F.R. § 5.2(b)(1)-(3) (2016).  As a controlling person of WTCG, Wright is liable for WTCG's violations of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C) (2012), and Commission Regulation 5.2(b)(1)-(3), 17 C.F.R. § 5.2(b)(1)-(3) (2016), pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

75.     Each misrepresentation, omission of material fact, false statement, and misappropriation, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C) (2012).

## COUNT TWO

### Violation of Section 4*o*(1)(A)-(B) of the Act, 7 U.S.C. § 6*o*(1)(A)-(B)
### (Fraud and Deceit by a CPO)

76.     Paragraphs 1 through 75 are re-alleged and incorporated herein by reference.

77.     During the Relevant Period, WTCG engaged in a business, for compensation or profit, that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and in connection therewith, solicited, accepted, or received from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including in relevant part transactions in foreign currency.  Therefore, WTCG constituted a CPO as defined by Section 1a(11) of the Act, 7 U.S.C. § 1a(11) (2012).

78.     An Associated Person ("AP") of a CPO is defined by Regulation 1.3(aa)(3) as any person who is a partner, officer, employee, consultant, or agent (or any natural person occupying a similar status or performing similar functions), in any capacity which involves (i) the solicitation of funds, securities, or property for a participation in a commodity pool or (ii) the supervision of any person or persons so engaged.  During the Relevant Period, Defendant Wright acted as an AP of WTCG.

79.     During the Relevant Period, WTCG was not registered with the Commission as a CPO.

80.     Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2012), prohibits CPOs and APs of CPOs, whether registered with the Commission or not, from using the mails or any means or instrumentality of interstate commerce, directly or indirectly, from (A) employing devices, schemes or artifices to defraud any client or participant or prospective client or participant,

and/or (B) engaging in transactions, practices, or courses of business which operated as a fraud or deceit upon any client or participant or prospective client or participant.

81.    While acting in its capacity as a CPO, Defendant WTCG, by and through its officers, agents or employees, knowingly or recklessly: (1) misrepresented in solicitations that all or substantially all of participants' funds would be pooled and used to engaged in forex trading; (2) made and sent to pool participants false account statements that inflated and misrepresented the value of their accounts and the pool's trading returns; (3) misrepresented that pool participant funds were available for withdrawal; and (4) misappropriated pool participants' funds for unauthorized personal or business expenses rather than trading retail forex transactions and failed to disclose that pool participants' funds had been misappropriated.  Therefore, WTCG violated Section 4$o$(1) of the Act, 7 U.S.C. § 6$o$(1) (2012).

82.    Defendant Wright directly violated Section 4$o$(1)(A)-(B) of the Act, 7 U.S.C. § 6$o$(1)(A)-(B) (2012), while acting in the capacity as an AP of CPO Defendant WTCG, by (1) misrepresenting in solicitations that all or substantially all of participants' funds would be pooled and used to engaged in forex trading; (2) making and sending to pool participants false account statements that inflated and misrepresented the value of their accounts and the pool's trading returns; (3) misrepresenting that pool participant funds were available for withdrawal; and (4) misappropriating pool participants' funds for unauthorized personal or business expenses rather than trading retail forex transactions and failing to disclose that pool participants' funds had been misappropriated.

83.    The foregoing acts, omissions, and failures of Defendant Wright occurred within the scope of his employment or office with WTCG.  Therefore, WTCG is liable for Wright's acts, omissions, and failures in violation of Section 4$o$(1)(A)-(B) of the Act, 7 U.S.C. § 6$o$(1)(A)-

(B) (2012), pursuant to Section 2(a)(1)(B) of the Act, as amended, 7 U.S.C. § 2(a)(1)(B) (2012),

and Regulation 1.2, 17 C.F.R. § 1.2 (2016).

84.     Defendant Wright held and exercised direct and indirect control over WTCG and

either did not act in good faith or knowingly induced WTCG's violations of Section 4*o*(1)(A)-

(B) of the Act, 7 U.S.C. § 6*o*(1)(A)-(B) (2012).  As a controlling person of WTCG, Wright is

liable for WTCG's violations of Section 4*o*(1)(A)-(B) of the Act, 7 U.S.C. § 6*o*(1)(A)-(B)

(2012), pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

85.     Each misrepresentation, omission of material fact, false statement, and

misappropriation, including but not limited to those specifically alleged herein, is alleged as a

separate and distinct violation of Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2012).

### COUNT THREE

### Violation of Sections 2(c)(2)(C)(iii)(I)(cc) and 4m(1) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6m(1), and Regulation 5.3(a)(2), 17 C.F.R. § 5.3(a)(2) (Failure to Register as a Retail Forex CPO)

86.     Paragraphs 1 through 85 are re-alleged and incorporated herein by reference.

87.     Section 2(c)(2)(C)(iii)(I)(cc) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc) (2012),

prohibits a person, unless registered in the capacity as required in Commission rule, from

operating or soliciting funds for a pooled investment vehicle that is not an ECP in connection

with forex transactions described in Section 2(c)(2)(C)(i) of the Act, 7 U.S.C. § 2(c)(2)(C)(i)

(2012).

88.     During the Relevant Period, Defendant WTCG was not registered as a CPO while

it operated and solicited funds for a pooled investment vehicle that was not an ECP while

engaged in forex transactions described in Section 2(c)(2)(C)(i) of the Act, 7 U.S.C. §

2(c)(2)(C)(i).  Therefore, Defendant WTCG was in violation of Section 2(c)(2)(C)(iii)(I)(cc) of the Act.

89.     Section 4m(1) of the Act, 7 U.S.C § 6m(1), makes it unlawful for any CPO, unless registered with the Commission, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO.

90.     During the Relevant Period, WTCG engaged in a business, for compensation or profit, that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and in connection therewith, solicited, accepted, or received from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including in relevant part transactions in foreign currency described in Section 2(c)(2)(C)(i) of the Act, 7 U.S.C. § 2(c)(2)(C)(i).  Therefore, WTCG constituted a CPO as defined by Section 1a(11) of the Act, 7 U.S.C. § 1a(11) (2012).

91.     During the Relevant Period, WTCG, while using the mails or means of interstate commerce in connection with business as a CPO, was not registered with the Commission as a CPO.  Thus, WTCG acted as an unregistered CPO in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012).

92.     Regulation 5.3(a)(2), 17 C.F.R. § 5.3(a)(2) (2016), requires any CPO engaged in retail forex transactions to register with the Commission.  Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2016), defines a CPO as any person who "operates or solicits funds, securities, or property for a pooled investment vehicle that is not an eligible contract participant as defined section 1a(18) of the Act, and that engages in retail forex transactions."

93.     During the Relevant Period, WTCG solicited funds, securities, or property for a pooled investment vehicle that was not an ECP and engaged in retail forex transactions (as defined by Regulation 5.1(m), 17 C.F.R. § 5.1(m) (2016)).  Thus, WTCG acted as a CPO engaged in retail forex transactions as defined by Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2016), and was not otherwise exempt or excluded from registration as a CPO.  Because WTCG was not registered with the Commission as a CPO and engaged in retail forex transactions, it violated Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2016).

94.     Wright held and exercised direct and indirect control over WTCG and either did not act in good faith or knowingly induced WTCG's violations of Sections 2(c)(2)(C)(iii)(I)(cc) and 4m(1) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6m(1) (2012), and Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2016).  As a controlling person pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), Wright is liable for WTCG's violations of Sections 2(c)(2)(C)(iii)(I)(cc) and 4m(1) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc) and 6m(1) (2012), and Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2016).

## COUNT FOUR

### Violation of Regulation 4.20(a)-(c); 17 C.F.R. § 4.20(a)-(c)
**(Failure to operate pool as separate entity; failure to receive investor funds in pool's name; commingling pool funds)**

95.     Paragraphs 1 through 94 are re-alleged and incorporated herein by reference.

96.     Commission Regulation 5.4, 17 C.F.R. § 5.4 (2016), states that Part 4 of the Regulations, 17 C.F.R. §§ 4.1, *et seq.*, apply to any person required to register as a CPO pursuant to Part 5 of the Regulations relating to forex transactions. 17 C.F.R. §§ 5.1, *et seq.*

97.    Commission Regulation 4.20(a), 17 C.F.R. § 4.20(a) (2016), requires a CPO, whether registered or not, to operate its commodity pool as a legal entity separate from that of the CPO.

98.    Commission Regulation 4.20(b), 17 C.F.R. § 4.20(b) (2016), prohibits CPOs, whether registered or not, from receiving pool participants' funds in any name other than that of the pool.

99.    Commission Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2016), prohibits a CPO, whether registered or not, from commingling the property of any pool it operates with the property of any other person.

100.    During the Relevant Period, WTCG, while acting as a CPO, violated Commission Regulation 4.20(a)-(c), 17 C.F.R. § 4.20(a)-(c) (2016), by: (1) failing to operate a commodity pool as a legal entity separate from Wright or WTCG; (2) receiving pool participants' funds in the names of Wright or WTCG rather than the commodity pool; and (3) commingling the property of the pool with property of Defendants or others.

101.    Defendant Wright held and exercised direct and indirect control over WTCG and either did not act in good faith or knowingly induced WTCG's violations of Regulation 4.20(a)-(c), 17 C.F.R. § 4.20(a)-(c) (2016).  As a controlling person of WTCG, Wright is liable for WTCG's violations of Regulation 4.20(a)-(c), 17 C.F.R. § 4.20(a)-(c) (2016), pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

## VI.    <u>RELIEF REQUESTED</u>

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and pursuant to its own equitable powers:

A.    Enter an order finding that:

    1) Defendants violated Sections 4b(a)(2)(A)-(C), 4m(1), 4o(1)(A)-(B), and

2(c)(2)(C)(iii)(I)(cc) of the Act, as amended, 7 U.S.C. §§ 6b(a)(2)(A)-(C),

6m(1), 6o(1)(A)-(B), and 2(c)(2)(C)(iii)(I)(cc) (2012); and

    2) Defendants violated Regulations 4.20(a)-(c), 5.2(b)(1)-(3), and 5.3(a)(2), 17

C.F.R. §§ 4.20(a)-(c), 5.2(b)(1)-(3), and 5.3(a)(2) (2016);

B.    Enter an order of permanent injunction restraining, enjoining and prohibiting

Defendants, and any other person or entity in active concert with them, from engaging in conduct

in violation of Sections 4b(a)(2)(A)-(C), 4m(1), 4o(1)(A)-(B), and 2(c)(2)(C)(iii)(I)(cc) of the

Act, as amended, 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6m(1), 6o(1)(A)-(B), and 2(c)(2)(C)(iii)(I)(cc)

(2012), and Regulations 4.20(a)-(c), 5.2(b)(1)-(3), and 5.3(a)(2), 17 C.F.R. §§ 4.20(a)-(c),

5.2(b)(1)-(3), and 5.3(a)(2) (2016);

C.    Enter an order of permanent injunction prohibiting Defendants and any other

person or entity in active concert with them from, directly or indirectly:

    1) Trading on or subject to the rules of any registered entity (as that term is

defined by Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

    2) Entering into any transactions involving "commodity interests" (as that term is

defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2016)), for accounts held

in the name of any Defendant or for accounts in which any Defendant has a

direct or indirect interest;

    3) Having any commodity interests traded on any Defendant's behalf;

    4) Controlling or directing the trading for or on behalf of any other person or

entity, whether by power of attorney or otherwise, in any account involving

commodity interests;

5) Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling of any commodity interests;

6) Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2016); and

7) Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2016)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2016).

D.     Enter an order requiring Defendants, as well as any of their successors, to disgorge to any officer appointed by the Court all benefits received from acts or practices that constitute violations of the Act, as amended, and Regulations as described herein, including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, plus pre-judgment interest thereon from the date of such violations, plus post-judgment interest;

E.     Enter an order requiring Defendants, as well as their successors, to make full restitution, pursuant to such procedure as the Court may order, to every person or entity who sustained losses proximately caused by Defendants' violations (in the amount of such losses), as described herein, plus pre-judgment interest thereon from the date of such violations, plus post-judgment interest;

F.      Enter an order directing Defendants and any of their successors, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any of the customers whose funds were received by them as a result of the acts and practices which constituted violations of the Act, as amended, as described herein;

G.      Enter an order requiring each Defendant to pay a civil monetary penalty under the Act, to be assessed by the Court, in amounts of not more than the greater of (1) triple the monetary gain for each violation of the Act and Commission Regulations or (2) $170,472 for each violation of the Act and Commission Regulations;

H.      An order directing that Defendants, and any successors thereof, make an accounting to the Court of all of their assets and liabilities, together with all funds they received from and paid to investors and other persons in connection with commodity interests and all disbursements for any purpose whatsoever of funds received from commodity interests, including salaries, commissions, interest, fees, loans, and other disbursement of money or property of any kind from at least August 2010 to the date of such accounting;

I.      Enter an order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2413(a)(2) (2012); and

J.      Enter an order providing such other and further relief as this Court may deem

necessary and appropriate under the circumstances.


June 22, 2017                                    Respectfully submitted,

                                                PLAINTIFF U. S. COMMODITY
                                                FUTURES TRADING COMMISSION


                                        By: s/ Alejandra de Urioste_____
                                                Alejandra de Urioste
                                                Trial Attorney
                                                adeurioste@cftc.gov
                                                (646) 746-9700

                                                K. Brent Tomer
                                                Chief Trial Attorney
                                                ktomer@cftc.gov
                                                (646) 746-9700

                                                Manal M. Sultan
                                                Deputy Director
                                                msultan@cftc.gov
                                                (646) 746-9700

                                                U.S. Commodity Futures Trading
                                                Commission
                                                140 Broadway, 19th floor
                                                New York, NY 10005
                                                (646) 746-9700
                                                (646) 746-9940 (facsimile)